County. Well, you're muted. Mr Wood, you're muted. Okay. Sorry. Thank you, Your Honor. Good morning. I may please the court and counsel. I'm Jason Wood. I represent the plaintiff appellant in this case, Derek Thomas. Mistakes in this case really can't be overstated very What's at issue here is really the continued viability of the heretofore well-established right to be free from an arrest in retaliation for the exercise of a substantive constitutional right, whether it's the First Amendment right to freedom of speech or freedom of religion, Second Amendment right to keep and bear arms. The district court and the defendants in this case have attempted to, and the district court did, impose upon the recent decision of the U.S. Supreme Court, Neeves v. Bartlett, an interpretation that we believe is not at all justified. It is so restrictive, the interpretation, that it almost destroys the constitutional rights that I just mentioned. In this particular case, my client, Derek Thomas, a law-abiding citizen, a young man in his early 20s, he wakes up from a flu-induced nap on the New Year's Eve of 2017 and is told he's being arrested. We're familiar with the facts. So let me ask you about Neeves. So Neeves follows Hartman, basically. Hartman says no malicious prosecution case unless you plead and prove no probable cause, and Neeves says the same thing with retaliatory arrest, but then poses a single exception, a comparatory exception. So why shouldn't we read Neeves exactly the way it was written, which is what it says? Well, I suppose that I might have some disagreement with the court on what it says. My understanding of what Neeves says is that, yes, there is a general requirement of proof of no probable cause in such a retaliation case, but that is not a substantive change to the right to be free from retaliatory arrest. What Neeves did was essentially clarify the types of evidence that is necessary to prove causation, that is, whether or not the retaliatory motive is what caused the constitutional injury. And so what the Neeves court did was clarify that in the ordinary case, due to certain proof problems that are inherent, especially in First Amendment cases, then we're going to impose a general requirement of proof of no probable cause, but recognize an exception. And I think this is probably where, this is where we have a definite disagreement with the district court, and that is the exception is not a jaywalking exception. It's not even an exception that is limited to proof that the defendants typically, the language that the court used as an example was that circumstances where the defendants typically do not exercise their discretion to make an arrest. But that was just an example. The exception, the actual exception was that there are other circumstances where probable cause is not required, and that is where there are other circumstances where there is objective proof or objective evidence of disparate or differential treatment as compared to the kind of evidence there can be many different ways of establishing that. If I'm recalling the record correctly, you submitted comparatory evidence, the district court reviewed it and made a finding that your client had not been desperately treated. So is that a finding that we review for clear error, or is that a legal determination? I think it's both. Honestly, I think the court can review it as clear error and as legal error as well, because what the court did in that regard was misinterpreted the requirement of the example, the jaywalking example, the comparative evidence that was required by the comparator evidence. Didn't it in fact show that a substantial number of people who were engaged in a hit and run were actually arrested? Yes, yes, your honor. That is our alternative argument, even if you grant the interpretation of the appellees in the district court. We did in the case of Cassia County, cited approximately 223 people for the misdemeanor crime of leaving the scene. And we were able to establish, based solely of course, upon the evidence that the defendants agreed to produce. And that is that out of those 223 citations over the course of 10 or 15 years, I can't remember the exact number, that Mr. Thomas was one of only two who was actually arrested on the sole charge of leaving the scene. The district court, I thought, said that the hit and run suspects, over 58 percent, were arrested. Of course, some charges were added later, but charges were added later in this case as well, right? The district court also focused on the fact that for felony assault, where there was evidence of intentionally trying to hit someone, that there was 100 percent arrest rate, but two out of two, I think, was what the district court found. So we're just looking at the district court's factual determination, it sounds like, from the arguments you're making. Is that wrong? Well, I think to a certain extent, that's true. But only if you accept the initial conclusion, what the court said was 79 of them, only 35 percent of them were arrested, regardless. And so we still have 65 percent, even under the district court's interpretation. This is where I think it's a legal issue, is that even if you factual determination of the district court, you still have 65 percent of those who were cited were not arrested, all right? And that becomes a legal question as to whether or not that constitutes the typically exercise their discretion not to arrest. So what does the word typical mean? Well, 65 percent seems pretty typical. It doesn't mean every single case they don't exercise that. That's not the burden. If that's the burden that the court is imposing, then that is a legal issue. We believe it's clear error. Mr. Wood, as I understand your argument, you are not saying that whenever this Nevis exception is invoked, that that presents a question of fact that would defeat summary judgment. Am I correct in understanding your argument that you're saying this is a mixed question? Yes, Your Honor. I think it is a mixed question of law and fact. Does that mean that the district court could resolve this as a matter of law? Well, if it were to follow the law correctly, it would. I understand. I understand your argument is that the district court did not in this instance, but I'm trying to understand the broader principle, whether you're suggesting anytime this exception is invoked, we're going to have a factual dispute that has to go before jury for whether there are situations in which the district court can decide this is a matter of law. Well, yes. I mean, under Rule 56, there are circumstances in which it can be decided as a matter of law. But in this particular case, and I will say that this particular judge on occasion will simply weigh the evidence and make credibility determinations and basically perform the function of the jury. And that's what happened here. So what is it that the district court is deciding as a matter of law, the term typical or rarely? Yes. Okay. So the other thing that's tripping me up a bit, and perhaps you could help me understand your argument is when I read Nevis, the court says that there could be this exception to pleading and showing no probable cause when the plaintiff presents objective evidence that he was arrested when other similarly situated individuals not engaged in the same sort of protected speech had not been. So that sounds like more than just a comparison of arrest numbers for the offense at issue, the misdemeanor, leaving the scene of a crime or aggravated assault, whichever one we're considering. But it seems as if the court's suggesting that we'd also have to consider whether those people were similarly situated because they were engaged in exercising constitutional rights. And how would we do that? Maybe I'm overreading what they say there, but they talk about people engaged in the same sort of protected speech had not been arrested. So what do we do with that? That is a $100 question. I don't know. The problem with this is that this exception is indicative. I mean, there are no facts. It doesn't arise out of any facts for there to be any analysis for the court to look at and decide what might constitute sufficient evidence of this But if you take the district court and the appellees at their argument, then how is it possible? I mean, I suppose once in a very rare occasion, it might happen, but the vast majority of circumstances, a plaintiff could never prove that. How would we prove, as we indicated in our briefing, the only evidence that we have and that really is ever going to be available with regard to the reasons for the other arrests is what they choose to put in their reports and what they choose to put online in the court's information. We requested, and it's in the court's record, we requested information about motivation and information about whether or not there were firearms involved in any of these. That was in our written discovery request. They were timely, and the responses that were given by the defendant was, we don't know. We don't keep those Well, maybe that suggested that the court was talking about was a different situation, such as the example the court used, you know, Jay Watkins is endemic at a particular intersection, and only the plaintiff is arrested after exercising free speech rights. You know, a situation where you have protests and other things going on in which that sort of evidence would be available. Yeah, it goes to this kind of metadata analysis of past arrest statistics. Right, and that is the circumstance. That's the one circumstance that I could think of in which there might be such evidence, where you have one gathering, it's a First Amendment issue, and that's information that the plaintiff could actually obtain. We were at the mercy of the defense and what they did. Well, I'll tell you the one piece of information that we had on potential differential treatment with regard to the firearm issue is, we requested that information. They said, we don't know, we don't keep that information. We did have deposition testimony from the 30b6 deposition that's in the record that says, that's the type of information that normally we might put in there in our reports. Well, they weren't there, and so that's evidence. And number two, if they don't keep that information, then why did they keep that information with regard to my client? They were able to identify no other circumstances where guns were involved, except my client in 2013, March of 2013, decided this was the record. Acres, defendant Acres, stopped by my client's house and told him he couldn't use his gun. Well, he kept the record of a gun in that circumstance, and it was my client. And that Mr. Thomas arrested at that incident, what was the basis of the report? He was just driving by. The report itself doesn't contain any information as to why he was driving by my client's house. My client testified that he was out mowing the lawn, he had a sidearm, an open carry sidearm, and mowing his lawn, his front lawn. And Acres drives by and stops and you can't do that. But for some reason, so Officer Acres, although not arresting your client on that occasion, for some reason wrote a report about it? Yes, yes, yes. So we believe that's evidence of disparate treatment. I think this is just far too a restrictive reading of MIEVAs based on pure dicta, where we have words hanging out in the wind. I think the court, what it needs to do is follow the ordinary principles of means of proof of cases that require as an element, a certain mental state. That the Supreme Court really, by offering the example it did, was contemplating that the exception to MIEVAs would be extremely rare, that method of proof that you engaged in is not going to be the ordinary method of proof for this, because the evidence is really not even available. Because we can't know the circumstances of all those so-called comparator crimes. That's exactly right, and that's why, Your Honor, we believe this is one of those rare cases, because we have real-time recorded admission by Acres of what his motives were and the cause of my client's constitutional deprivations. And that makes the case very similar to Ford v. Yakima, which we believe is still good law, clarified by MIEVAs. And that is, in those rare circumstances where you have that admission recorded, it's not just based upon the unsupported self-serving testimony of the plaintiff, but we have actual indisputable evidence of what that intent is. That kind of recording existed in Ford v. Yakima, and I think that's what Justice Gorsuch was contemplating when he said, look, we need to construe this requirement and this exception commonsensically. The way exactly did Acres stay on the body cam? I have it right here, just a moment, Your Honor. I have a note that says it didn't really show a retaliatory motive. Okay. I want to think about that again. Yes. Okay. Here's exactly what he said, and this is in ER 237. And that is, the odds of us getting a conviction out of this are pretty slim, but it would be nice to get a conviction out of him because then we can get his guns taken away from him. Obviously, he doesn't come right out and say, by the way, the reason I'm doing this is he keeps exercising Second Amendment rights, and I don't like that, and so I'm going to arrest him. But your argument is that because he was charged with aggravated assault instead of just hit and run, that the aggravated assault charge, which they didn't think they'd get a conviction on, was added in order to keep him, if they could, that he would lose his guns. He'd be a felony. Yes, Your Honor. And I think that the quotation that he says to get a conviction out of this, you know, I think that can be interpreted as both the misdemeanor and the felony, and they didn't get a conviction on either one. It's only the felony that would deprive him of the right to carry his guns, right? That's true. That's probably true, yes. So we believe that this is one of those rare circumstances. The court has to be flexible, especially with regard to an exception to a pretty rigid requirement that's based on pure dictum, on facts that didn't exist. And so the court needs to fall back on the types of evidence that it uses to determine an element of a state of mind of the defendant. And one of those is in the discrimination context, and that's what the court often does, is if there is direct evidence, most of the time, that's the reason you have this McDonnell Douglas burden shifting in employment cases, most of the time, just like these cases, you don't get to crack open the head of the arresting officer or the employer who fires the employee to find out what their intent is. In this case, they do. We do have that. It's one of those very rare circumstances where we have that evidence, and that satisfies the objective evidence of differential treatment. It explains why they treated him differently than the other cases in which they made, all the other cases where they didn't arrest people for this crime and solely for this crime. And so that's the basis for, in our interpretation of what NEAVIS does. It doesn't go nearly as far as the district court said. All right. Well, thank you, counsel. You're over your time. So let's hear from the county. Thank you. I guess we're hearing from the county and who else? Your Honor, Sam Angel representing the county. It may make sense for Mr. Peterson to chime in at this point. He does represent Deputy Akers. However, I'm willing to proceed if you would prefer. Well, let's come with Mr. Peterson first. He has the greater amount of time. Thank you, Your Honor. May it please the court, my name is Reed Peterson. I represent Defendant Appellee Michael Akers. We're asking the court to affirm the district court's granted summary judgment on all of Derek Thomas's claims against Deputy Akers. And I want to make two brief points in response to the appellant's arguments. The first is that this NEAVIS comparator argument is largely grounded in the idea that the police officer's conduct is approached from an objective standpoint. So the requirement of comparator evidence essentially says there's an objective rule. We have an objective exception to that objective rule. The court cautioned and on oral argument, this was raised by a number of justices and is reflected in the opinion where it is used. It creates a jury issue in all cases because it's such an easy thing to allege. And the problem there is that you get into a situation where you're allowing this subjective evidence, which again is very easy to allege, to undermine the objectivity. And I want to push back on the idea that for some reason you can't ever prove this without somehow being included in the police records. For starters, in this case on receiving that supplemental discovery, the plaintiff was provided with the contact information of every single person within that 13-year period that he arrested. He was provided with all of their contact information. It was provided in unredacted form. At no point did he go out and interview any of those individuals saying, hey, have you ever had interactions with the arresting officer before? What were those interactions like? To provide some sort of comparative evidence to say this individual was not engaged in First Amendment rights and was not arrested in a very similar situation to my client. That would be the kind of thing that would be available in nearly every single case. I want to highlight really quickly a case from 2018 before this court, and that would be Sellers. And the citation for that is 906 F3rd 848. And that's essentially a selective enforcement claim. The police officers set up a sting operation with a fake trap house. And so the idea was, well, you're only targeting me based on the basis of my race, and you could have targeted other people. In that situation, because there's actually no real trap house, and you're just going around looking for people that fit the description that you think would fall for this sort of a scheme, that's the situation where there wouldn't be evidence because there's no way to tell who could have been targeted but was not. In this case, we have those arrest records. You have all that contact information. You have 13 years worth of people who you could interview and say, what were interactions prior to or during the arrest in question or the citation in question? So I want to start with that. The second point that I briefly want to make is that the Second Amendment retaliation claim, Thomas has never actually identified any protected Second Amendment right. None of the three occasions that he identifies in his deposition are within protected conduct as set forth in Heller and McDonald. All three of those instances are either dealing with a concealed carry issue or openly carrying a firearm in public. This is not an instance where he was carrying a firearm within the curtilage of his home. The fence that is around that particular property, and you can see this from the arrest video, that fence doesn't cover the front yard and it doesn't make any sense that if he was in fact behind the fence that acres would have been able to see him carrying that firearm. So the Second Amendment issue is largely irrelevant. The final thing that I want to address is this assertion that only two people were solely arrested on the grounds of hit and run. Now, we identified in our briefing as just a sampling, which we did before the district court to refute the idea that the plaintiff's arrest record summary was in fact accurate and accurately depicted the actual state of arrest. We provided just eight cases that showed that these arrests were made for other reasons than depicted in that case summary. And I could just direct the court to those really quickly. For Mr. Smith, that is located... It sounds like you're agreeing that the relative comparator is always hit and runs, whereas the district court found that the relative comparator was the aggravated assault. Certainly, that's our primary argument is in fact that Thomas and those other two comparators, those aggravated assault cases, are in fact the appropriate comparator for that purpose. But again, just providing an arrest statistic is insufficient under NIEVAS to qualify for that exception. You still have to be able to show that there were other individuals not engaged in protective activity that were not arrested. And that just simply is not the case here. There's been no evidence ever put forward either to district court or here that would show that in First Amendment conduct that were not arrested. What did we do with Aker's comments when he decided to arrest him for aggravated assault that even he didn't think he'd get a conviction on that, that he wanted to go for it so that he could disqualify Thomas from having guns? Well, Your Honor, the issue with that statement is that, first of all, NIEVAS says that the statements and motivations of the arresting officer are eliminated at this stage. Now, I want to point out very briefly from the NIEVAS opinion is kind of the structural portion of that and the way that analysis flows. NIEVAS says, first, you have to plead and prove the absence of probable cause. If there is probable cause, you can still get around that by showing the other people not engaged in the protected conduct were not arrested when you were. Now, in either event, if you can meet that first step of the NIEVAS test, then you advance to Mount Healthy, which is where you get into subjective evidence statements of the officers, everything like that. So it's not as if this evidence never comes in in these cases. So it's clear, at least to me, there's probable cause for hit and run. But what's the probable cause for the activated assault? Certainly, Your Honor, it's based on the same conduct. If you look at the statute involved, what you really need to have probable cause to show is that there's some sort of an intentional either attempt or an intentional threat made to the victim that's likely to produce severe bodily harm, and the victim then believes that that harm is imminent. So if you take the factual scenario that we have here, and this is even taking into account the statement of Mr. Blauer, after the arrest had occurred, everything leading up to that point leads Akers to believe that he has a fair probability that this did occur. And again, that's the standard for summary judgment. He had a fair probability of believing that that conduct occurred. You have one more wrinkle on this analysis, too. What is the role of the fact? How does it play into the analysis that the prosecutor then reviewed the evidence and made the decision to charge with the aggravated assault? Do we have some kind of independent decision maker here that would, I mean, it goes beyond the ads, but that would then point to that the motivation was not retaliatory because there was an independent decision maker who actually made the decision to charge? Well, Your Honor, I think there's actually a pending case that kind of deals with this. So I'm not really sure how this court has or will come down on it. I believe it's City of Las Vegas, which is pending. But the idea is that that actually merely just goes to a defense for the plaintiff's malicious prosecution case. I think that this court, I briefly reviewed the oral argument of Ballantyne. The discussion is basically, is that really something? Is the malice portion of it, or the prohibited animus, that isn't typically something that an independent decision maker will make as it relates to these retaliatory arrest claims, but it certainly is relevant for the purposes of the malicious prosecution side. And so the other final point that I want to make is that essentially, you know, Thomas at the district court level provided all of these underlying arrest records to the district court. And then when the district court drew the inferences from those arrest records, Thomas then is now saying, well, that's just incorrect. It hasn't really provided this court any basis by which to counteract the inferences that the district court made. And for all of those reasons, again, just in conclusion, I'll give the rest of my time over to the county, but the district court's decision was correct on all grounds to grant summary judgment in favor of Deputy Akers. All right. Thank you, counsel. Mr. Hall? Actually, Sam Angel, my partner, Mr. Hall, couldn't make it today. Your name is so small there, so I looked down at my sheet and guessed Mr. Hall, so sorry. Okay. May it please the court. My name is Sam Angel. I represent the county. I didn't mean to push myself to the end of the line, but I do have a rather limited issue in this appeal. And that's really the question on the Monell issue against the county. And that issue that has been raised by the appellant is a ratification issue. And I want to first make sure it's clear that the appellant did not appeal any claims against Sheriff Huard, who we also represent in his individual capacity. So those are waived. The only claim raised was a Monell claim against the county. And to address this briefly, I want to point out that Judge Nye at the district court level got this exactly correct. He looked at the correct case law on ratification. He analyzed that case law, and he reached the correct conclusion. This court has good law that to hold cities liable under a 1983 claim where policymakers fail to override or overrule an unconstitutional discretionary act would simply smuggle respondeat superior in under the PEMBAR decision. And this court has said, we decline to endorse this and run around Monell. And that's exactly what the appellant is trying to do with this claim. The appellant is arguing that there was a single discretionary act by acres and that Sheriff Huard or the county failed to take disciplinary action against him and that that is enough to establish a Monell claim. But the case law is exactly the opposite. When these cases have been raised in the past, and where courts have found that failing to discipline or failing to overrule a subordinates discretionary action, they've only held that in situations where there were either multiple officers involved in the incident, or there were multiple incidents of violations of the law, such that it would suggest that there's a course of conduct or informal policy at the county level that is being supported by the supervisors. Each of the cases that were cited by the appellant, the Henry versus Shasta case, and that line all involve cases where there were either multiple violations against multiple individuals, or there were multiple officers engaged in the violations. So they're all distinguishable. The case that's on point is the Gillette case. And that case, if applied to these facts, would reach a conclusion that the county did not ratify Deputy Acres' conduct. In fact, the facts of the case, I want to get back to what Sheriff Huard said. If you look at excerpts of record 331, Sheriff Huard says in his deposition, I remember telling him that the way he did it would not have been the way that I would have done it. And he goes on to explain why this could easily be interpreted as a verbal reprimand or a coaching session by Sheriff Huard against Acres for how he handled this incident. It's clearly not an incident where Sheriff Huard endorsed the outcome and the methodology. And in the Gillette case, this court has held, and I think it's important to look at that, that under PEMBAR, there has to be proof that the city's manager's alleged acquiescence in Gillette's termination resulted in the termination. There has to be evidence of acquiescence. This court also looked at the Proprotnick case, which shows that it requires that the policymaker approve this subordinates decision and the basis for it in order for there to be a ratification. And so here we have the supervisor neither approving it or the basis for it. Sheriff Huard recognized that there was probable cause for the stop. Therefore, Deputy Acres was not disciplined or terminated, but he did not agree with the methodology or the basis for the reason the way he reached that conclusion. So we believe that Judge Nye got that correct. It was one incident, one deputy, and one discretionary act that was not ratified by Sheriff Huard, and therefore the ratification claim fails. Unless you have any other questions for me, I think I'm finished. Thank you. Thank you, Mr. Angel. Mr. Wood, I'll give you a couple more minutes. Okay. Thank you, Your Honor. I'll just start with the county's arguments. Mr. Angel, I think he is conflating different ways of proving a Monell claim. He seems to be referring to the pattern of conduct method of proving a de facto policy for purposes of Monell liability, in which case, yes, you do have to show a pattern of conduct. That's not what we're talking about. We're talking about a case law that makes it clear that post-conduct evidence of this very time, counsel quotes the language. That was a very accurate statement by the sheriff. What he left out was the fact that the sheriff, as we've cited in the record of the court, the sheriff said, when I asked him, well, did you intend in saying that for him to not do that again? No. Did you ask him to not do it that way again? No. Did you tell him he'd done it wrong? No. Did you make any changes in policy so to make sure this didn't happen again? No. Did you punish him? No. Did you ever make an admission that this was the wrong way to do things other than to say that you might have done things differently? No. That's exactly, the court looks to the McCrory case and the Henry case and the Fifth Circuit case that they cited as the leading case on this. That's exactly the kind of evidence that's used to establish ratification. Ratification is a separate means. That is, there is one different act. The case cited by counsel is completely distinguishable. We did distinguish it in our brief. The decision maker that was sued, the defendant, the decision maker that was sued in that case, who was claimed to be at fault for not taking action to correct the officers, was somebody who had delegated their authority. This case is undisputed. Sheriff Huard said, I didn't delegate the authority. I was the one that conducted the investigation. I interviewed the witnesses. I interviewed the takers. I made a determination. I interviewed them, and I never told them he did anything wrong, and we never took any disciplinary action. And that is ratification. With regard to the Nieves issue, counsel's argument from Akers that comparative, he said that this comparative type of exception is objective. I think that's a misinterpretation of the term objective. What I understand him to say is that the state of mind of the arresting officer is irrelevant. Well, that's not true. The Nieves court made it clear and reaffirmed that there still exists, and it is the primary element of a retaliation claim that the arresting officer had a retaliatory animus, and that that animus was the but-for cause of the constitutional injury. So it's impossible to both say that and say that state of mind is irrelevant. Now, the problem is the difficulty in proving that state of mind, and we don't have those difficulties. None of the difficulties identified by the court in Nieves exist in this case, and that's why we have the Seventh Circuit in the Lunda case, the DiMartini case, the Eleventh Circuit case, and several district court cases that have addressed this issue that was raised by Justice Gorsuch, where they have found that where an admission of the we have presented to the court is objective evidence, the type of objective evidence that is sufficient to qualify and present the matter of the motivation and the cause of constitutional injury to the jury. And so with that, Your Honor, I thank you for allowing me some extra time to address those issues. If the court has any questions, I will be happy to answer them. Right. Thank you, counsel. Thomas v. Cascia County is submitted, and this session of the Thank you. This court for this session stands adjourned.
judges: WARDLAW, IKUTA, BADE